1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    JERRY W. NEUFELD, JR.,                    No.  1:14-cv-1505 DAD-JLT[1]

12                 Plaintiff,

13          v.                                   ORDER

14    WINCO HOLDINGS, INC., dba WINCO
      FOODS, an Idaho Corporation, and DOES
15    1 to 100 inclusive,

16                 Defendants.

17

18

19          Jerry W. Neufeld, Jr. charges his former employer, WinCo Holdings Inc., with

20    employment claims under the California Fair Employment and Housing Act (FEHA).  Neufeld

21    was a cashier.  WinCo moves for summary judgment and argues among other things that Neufeld

22    could not perform his essential job duties.  The court held a hearing on January 15, 2016.

23    Michelle Iarusso appeared for Neufeld and Michael Kopp appeared for WinCo.  For the following

24    reasons, the motion is granted.

25    /////

26    /////

27    _____

28    [1] Since oral argument on the instant motion this case has been reassigned to Judge Dale A.
      Drozd.  Because Judge Mueller heard the motion, she issues this order.

1    I.    UNDISPUTED FACTS AND PROCEDURAL HISTORY

2          The court has determined the following facts are not subject to genuine dispute.

3    Neufeld suffers from anxiety, which causes him panic attacks and dizziness.  Neufeld Dep. 98-99.

4    Sometimes his anxiety arises first thing in the morning when he wakes up, and other times his

5    surroundings cause him anxiety later on in the day.  *Id.* at 120–21.  For example, he may

6    experience anxiety when riding in cars or when surrounded by many people.  *Id.* at 340.  His

7    condition is unpredictable, *id.* at 349, and his physician has described his anxiety as "chronic,"

8    *see* Launey Decl. Ex. B, at 122, ECF No. 18-5.

9          WinCo hired Neufeld as a part-time cashier in March 2012.  Reply Stmt. Undisp.

10   Material Facts (UMF) no. 2, ECF No. 20-1.  WinCo's job description lists the typical duties and

11   responsibilities of a cashier:

12               Maintains an atmosphere of enthusiastic customer awareness with
                 an emphasis on fast, friendly customer service.
13

14               Operates checkstand equipment such as a cash register, scanner and
                 scale to process customer orders using two aisles to check
                 customers.
15

16               Engages in suggestive selling and other sales techniques.

17               Processes monetary transactions (i.e. giving and receiving change,
                 etc.) including cash, checks, gift certificates, travelers checks, food
                 stamps, processing coupons, and refunds.
18

19               Maintains knowledge of current production location, monitors UPC
                 codes and ensures proper pricing.

20               Maintains clean, neat and properly stocked checkstand and ensures
                 safe and secure work area.
21

22               Stocks, prices and rotates merchandise.

23               Performs other duties as assigned or needed.

24   Launey Decl. Ex. B, at 40; *see also* Iarusso Decl. Ex. 2, at D000351, ECF No. 19-2; *id.* at

25   D000394.  Neufeld's work sometimes caused him anxiety.  Neufeld Dep. 121.  In particular, he

26   could suffer anxiety attacks when he was surrounded by many people in the small space near the

27   cash register.  *Id.*  His condition could improve when he was able to walk around, for example

28   /////

                                              2

1    when he performed "go-backs," that is, when he reshelved items customers had returned.  *Id.*

2    at 43, 121.

3                  Soon after Neufeld began work at WinCo, he began missing work due to his

4    anxiety.  *See* UMF no. 4.  He told WinCo about his anxiety, and WinCo offered to excuse his

5    absences if he submitted periodic medical documentation.  *Id.*; Launey Decl. Ex. B, at 47.

6    WinCo also later asked Neufeld to have his treating physician "supply a written narrative

7    explaining that [certain] absences" were due to his anxiety.  Launey Decl. Ex. B, at 70; *see also*

8    *id.* at 116.  Similarly, WinCo requested Neufeld have his physician "supply a narrative affirming

9    the estimated frequencies and duration of [his] intermittent leave" so it could more conveniently

10   accommodate his need for intermittent leave.  *Id.* at 70 (emphasis omitted).  At the time, WinCo

11   offered this plan as a reasonable accommodation for Neufeld's anxiety.  UMF no. 4.

12                 WinCo and Neufeld went forward with this plan.  On dozens of occasions

13   throughout 2012 and 2013, Neufeld submitted medical documentation to justify his absences, and

14   WinCo excused him from work.  *See* UMF nos. 6, 7, 9, 11, 13, 18, 20, 23, 24, 25, 27, 28.[2]  On

15   many other occasions over the same period, however, Neufeld was either absent for reasons

16   unrelated to his anxiety or did not send WinCo the particular medical documentation it requested.

17   *See* UMF nos. 8, 10, 12, 14, 15, 17, 21, 22.[3]  Due to these unexcused absences, Neufeld received

18   a verbal warning in October 2012, UMF no. 16, and a written warning in December 2012, UMF

19   no. 19.  On April 28, 2013, Neufeld was suspended without pay for excessive unexcused absences

20   between May 8 and 10, 2013, UMF no. 26; Launey Decl. Ex. B, at 202, and his employment was

21   later terminated for excessive unexcused absences in August 2013, UMF no. 30; Launey Decl.

22   Ex. B, at 42.

23   _____

              [2] Neufeld claims these facts are disputed to the extent WinCo implies he was not a
24   qualified individual or that WinCo had no obligation to engage in the interactive process.  But
     Neufeld cites no evidence to create a genuine dispute about whether he submitted documentation
25   or was excused on the days indicated.  The court therefore interprets his responses as legal
     arguments and considers them to that extent.
26
              [3] Neufeld raises several of the same objections here as described in the previous note.  *See*
27   *supra* note 1.  The court considers these objections similarly as legal arguments.  Neufeld also
     argues he submitted generalized medical documentation, but he cites no evidence to show this
28   was the documentation WinCo requested as part of its then-standing accommodation.

1    Neufeld filed this action in Kern County Superior Court in July 2014, asserting

2   five claims: (1) disability discrimination in violation of the FEHA; (2) common law wrongful

3   termination in violation of public policy; (3) failure to provide a reasonable accommodation for

4   his disability under the FEHA; (4) failure to engage in the good-faith interactive process under the

5   FEHA; and (5) failure to prevent discrimination under the FEHA.  Not. Removal Ex. A.  WinCo

6   removed the action to this court in September 2014 on the basis of this court's diversity

7   jurisdiction.  *See id.*  No motion practice occurred before WinCo filed this motion on October 21,

8   2015.  *See* Mot. Summ. J., ECF No. 18; Mem. P. & A. Summ. J. (Mem.), ECF No. 18-1.  Neufeld

9   opposed the motion, ECF No. 19, and WinCo replied, ECF No. 20.

10   II.    LEGAL STANDARD

11    A court must grant a motion for summary judgment "if the movant shows there is

12   no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

13   law." Fed. R. Civ. P. 56(a).  A motion for summary judgment calls for a "threshold inquiry" into

14   whether a trial is necessary at all, that is, whether "any genuine factual issues . . . properly can be

15   resolved only by a finder of fact because they may reasonably be resolved in favor of either

16   party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  The court does not weigh

17   evidence or assess the credibility of witnesses; rather, it determines which facts the parties do not

18   dispute, then draws all inferences and views all evidence in the light most favorable to the

19   nonmoving party.  *See id.* at 255; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

20   574, 587–88 (1986).  "Where the record taken as a whole could not lead a rational trier of fact to

21   find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587

22   (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

23    The moving party bears the initial burden of "informing the district court of the

24   basis for its motion, and identifying those portions of [the record] which it believes demonstrate

25   the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

26   (1986).  If, as here, the party opposing summary judgment bears the burden of proof at trial, the

27   moving party need only illustrate the "absence of evidence to support the non-moving party's

28   case." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).  The burden then shifts

4

to the nonmoving party to "go beyond the pleadings" and "designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (quotation marks omitted). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247–48.

III.     DISCUSSION

     A.     Claim 1: Disability Discrimination

        An employer may not discriminate against an employee on the basis of his or her disability. *See* Cal. Gov't Code § 12940(a). But the law does prohibit an employer from discharging a disabled employee who is unable to perform his or her essential duties because of that disability. *See id.* § 12940(a)(1); *Green v. State*, 42 Cal. 4th 254, 257 (2007). For this reason, to prevail on a claim for disability discrimination under the FEHA, a plaintiff employee must prove he or she was able to do the essential functions of his or her job with or without a reasonable accommodation. *Green*, 42 Cal. 4th at 262. For the reasons described below, no disputed question of fact requires a trial on (1) Neufeld's ability to attend work, or (2) whether he could have performed his essential duties with or without a reasonable accommodation. The evidence before the court allows only the conclusion that he could not.

        1.     Essential Functions

        California law defines "essential functions" as "the fundamental job duties of the employment position." Cal. Gov't Code § 12926(f). Essential functions do not include "marginal functions." *Id.* "Marginal functions of an employment position are those that, if not performed, would not eliminate the need for the job or that could be readily performed by another employee or that could be performed in an alternative way." *Nealy v. City of Santa Monica*, 234 Cal. App. 4th 359, 373 (2015) (quoting Cal. Code Regs., tit. 2, § 11065(e)(3)). On the other hand, a duty may be essential for any number of reasons, including because "the reason the position exists is to perform that function." *See* Cal. Gov't Code § 12926(f)(1).

/////

5

1    Here, there can be no dispute that Neufeld's duties as a cashier required his

2    physical presence at the checkstand.  No evidence suggests Neufeld could have remotely operated

3    a grocery store cash register, scanner, or scale, remotely accepted and received cash payments, or

4    remotely maintained a clean, neat and properly stocked checkstand.  *See* Launey Decl. Ex. B,

5    at 40.  Each of these duties was one of Neufeld's typical duties and responsibilities.  *Id.*  There is

6    likewise no dispute WinCo hires cashiers to process in-person grocery sales.  Regular, physical

7    attendance was an essential function of Neufeld's position.

8    Neufeld may not avoid this conclusion by arguing the job description imposed no

9    express requirement of regular and predictable attendance.  *See* Opp'n at 6–7.  No rational trier of

10   fact could conclude, in light of the job descriptions both parties cite, that WinCo cashiers were

11   free to attend work only sporadically and unpredictably.  *See Samper v. Providence St. Vincent*

12   *Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012) (listing decisions applying the Americans with

13   Disabilities Act (ADA) and finding "where performance requires attendance at the job, irregular

14   attendance compromises essential job functions"); *Lang v. Astrue*, No. 09-1083, 2011 WL

15   2149914, at *5 (S.D. Cal. Jun. 1, 2011) (finding in an ADA case that "some degree of regular,

16   predictable attendance is fundamental to most jobs," and that the plaintiff was not "excepted from

17   this general principle" because his written job description indicated his work was to be performed

18   in the office, among other reasons (citations and quotation marks omitted)).[4]  The importance of

19   regular and predictable attendance is underscored by WinCo's requests for a narrative from

20   Neufeld's physician regarding how frequently or for how long he would require intermittent

21   leave.  WinCo also reinforced the importance of regular and predictable attendance by giving

22   Neufeld verbal and written warnings about his absences.

23   /////

24   _____

25   [4] California courts recognize the utility of federal ADA decisions in FEHA cases.  *See,*
     *e.g.*, *Hastings v. Dep't of Corr.,* 110 Cal. App. 4th 963, 973 n.12 (2003) (noting that California
     courts "have looked to decisions and regulations interpreting the ADA to guide construction and
26   application of the FEHA" if the FEHA provision in question is similar to the one in the ADA
     (citation omitted)); *see also Green*, 42 Cal. 4th at 258 ("[T]he FEHA requires employees to prove
27   that they are qualified individuals under the statute just as the federal ADA requires.").  The court
     therefore considers the federal decisions cited above as persuasive authority.
28

1      Moreover, an employee may not create a dispute of material fact by claiming the

2    employer could have shifted others into the plaintiff's position to perform the essential functions

3    temporarily.  "Although it is true that an employer may demonstrate that a function is 'essential

4    because of the limited number of employees available among whom the performance of that job

5    function can be distributed,' . . . an employer may also demonstrate that a function is 'essential

6    because the reason the position exists is to perform that function.'"  *Pratt v. Delta Air Lines, Inc.*,

7    No. 1-00815, 2015 WL 2153397, at *7 (C.D. Cal. May 4, 2015) (quoting Cal. Gov't Code

8    § 12926(f)(1)(A), (B)); *accord Lang*, 2011 WL 2149914, at *5.  In other words, Neufeld cannot

9    show the in-person aspects of his cashier position were not essential by showing WinCo was able

10    to cope with his absence by reassigning other employees to fulfill them.  Regardless of WinCo's

11    ability to reassign work, it reasonably relies on cashiers' ability to regularly and predictably

12    attend to the duties their positions were created to fulfill.

13          2.     Reasonable Accommodations

14      As noted above, an employee can prevail in a disability discrimination case by

15    proving he or she could have performed the essential functions of the job with a reasonable

16    accommodation.  A reasonable accommodation is "a modification or adjustment to the workplace

17    that enables the employee to perform the essential functions of the job held or desired."  *Nadaf-*

18    *Rahrov v. Neiman Marcus Grp., Inc.*, 166 Cal. App. 4th 952, 974 (2008).  This definition is

19    modeled on the definition of the same term under the ADA.  *See id.*  "To avoid summary

20    judgment, a plaintiff must 'show that an accommodation seems reasonable on its face, *i.e.*,

21    ordinarily or in the run of cases.'"  *Pratt*, 2015 WL 2153397, at *8 (quoting *Dark v. Curry Cnty.*,

22    451 F.3d 1078, 1088 (9th Cir. 2006)).

23      Here, Neufeld proposes three accommodations: allowing him a leave of absence of

24    undefined length, granting him intermittent leave as his health necessitated, and assignment to

25    "go-backs" duty.  He has not carried his burden to show these accommodations were reasonable.

26    In general, each of these options would simply exempt him from one or more of the essential

27    functions of his job: regular attendance and in-person management of a checkstand.  The "FEHA

28

1    does not obligate the employer to accommodate the employee by excusing him or her from the

2    performance of essential functions." *Nealy*, 234 Cal. App. 4th at 375.

3            More specifically, a leave of absence of undefined length is not a reasonable

4    accommodation. *See id.* at 377–78; *see also Lara v. DNC Parks & Resorts at Tenaya, Inc.*,

5    No. 14-000103, 2015 WL 4394618, at *14 (E.D. Cal. July 16, 2015) ("[I]f the employer does not

6    know when the employee will be able to return to duty, the employer is not required to grant an

7    indefinite and lengthy leave." (quoting *Norris v. Allied–Sysco Food Servs., Inc.*, 948 F. Supp.

8    1418, 1439 (N.D. Cal. 1996), *aff'd.* 191 F.3d 1043 (9th Cir. 1999))).  Neufeld has presented no

9    evidence to show that any leave of absence would have enabled him to regularly attend to his

10   essential duties as a cashier. *See Pratt*, 2015 WL 2153397, at *8–10 (rejecting leave of absence

11   as reasonable accommodation under FEHA because plaintiff did not show "when and under what

12   conditions he could return to work at all" (quoting *Dark*, 451 F.3d at 1090)).

13           Neither must an employer permit its employees to work intermittently as their

14   health necessitates if attendance is one of their essential job duties. *See, e.g.*, *Samper*, 675 F.3d at

15   1239–40 (rejecting intermittent, needs-based leave as a reasonable accommodation because

16   attendance was an essential job function); *Pratt*, 2015 WL 2153397, at *10–11 (same); *Lang*,

17   2011 WL 2149914, at *6 ("Where regular and predictable attendance is an essential function of

18   the job, as is the case here, an accommodation requesting that an individual be permitted to work

19   whenever able is not reasonable under the circumstances.").  To permit such an accommodation

20   would "eviscerate any attendance policy" and cause "the essential functions and reasonable

21   accommodation analyses to run together." *Samper*, 675 F.3d at 1240.  Neufeld cannot create a

22   triable issue of fact on this question by showing WinCo at one time made certain exceptions to its

23   mandatory attendance policy.  WinCo's willingness to make a temporary exception does not

24   create a disputed question of fact as to the essential functions of Neufeld's job. *See Rincon v. Am.*

25   *Fed'n of State, Cty., & Mun. Emps.*, No. 12-4158, 2013 WL 4389460, at *11 (N.D. Cal. 2013)

26   (interpreting the ADA; collecting authority to show an employer does not concede a function is

27   non-essential by going above and beyond what the law requires).  To the extent Neufeld argues or

28   implies he should be assigned to a job that requires him to fulfill only go-back duty, as a matter of

8

1   law, this is an unreasonable accommodation because it would exempt him completely from many

2   of his essential cashier-related duties.  *See, e.g.*, *Nealy*, 234 Cal. App. 4th at 375 (an

3   accommodation that removes essential job duties is not reasonable).

4      Finally, were WinCo obligated to assign Neufeld to "go-backs" duty as a

5   reasonable accommodation, it would be required to exempt him from many of the essential duties

6   of a cashier.  *See* Launey Decl. Ex. B, at 40 (cashiers must operate equipment, process money

7   transactions, and engage in "suggestive selling and other sales techniques," among other

8   responsibilities).  As noted above, WinCo is not obligated to exempt its employees from their

9   essential duties as a reasonable accommodation.  *See Nealy*, 234 Cal. App. 4th at 375.

10     3. <u>Summary</u>

11     Neufeld has not responded to WinCo's motion with evidence to show he was

12  qualified to perform the essential functions of his position with or without a reasonable

13  accommodation.  Summary judgment is therefore granted for WinCo on his claim for disability

14  discrimination under the FEHA.

15     B. <u>Claim 2: Wrongful Termination in Violation of Public Policy</u>

16     When an employer discharges an employee in violation of "fundamental principles

17  of public policy, the discharged employee may maintain a tort action and recover damages

18  traditionally available in such actions."  *Tameny v. Atl. Richfield Co.*, 27 Cal. 3d 167, 170 (1980).

19  Here, Neufeld's claim for termination in violation of public policy rests on the same allegations

20  as his statutory discrimination claims.  *See* Compl. ¶ 25 (incorporating earlier allegations);

21  *id.* ¶ 27 ("WinCo . . . terminated Mr. Neufeld in violation of the fundamental public policy

22  against disability discrimination . . . .").  A common law claim for wrongful termination in

23  violation of public policy cannot survive if it is entirely derivative of terminated statutory claims.

24  *See, e.g.*, *McCarthy v. R.J. Reynolds Tobacco Co.*, 819 F. Supp. 2d 923, 937 (E.D. Cal. 2011);

25  *Jennings v. Marralle*, 8 Cal. 4th 121, 136 (1994).  Because summary judgment is granted as to

26  Neufeld's statutory disability discrimination claims, summary judgment is likewise granted as to

27  this claim.

28

1          C.      Claim 3: Failure to Reasonably Accommodate

2                  The FEHA imposes liability separately on employers should they fail to make a

3    reasonable accommodation for an employee's known disability.  Cal. Gov't Code § 12940(m);

4    *Nealy*, 234 Cal. App. 4th at 371.  "The elements of a reasonable accommodation cause of action

5    are (1) the employee suffered a disability, (2) the employee could perform the essential functions

6    of the job with reasonable accommodation, and (3) the employer failed to reasonably

7    accommodate the employee's disability."  *Nealy*, 234 Cal. App. 4th at 373.  The showing required

8    of plaintiff with respect to the second element above is identical to that imposed with respect to

9    his first claim for discrimination under § 12940(a), discussed above.  *Id.* at 378.  For the reasons

10   described in the section analyzing the first claim, summary judgment is granted as to this claim.

11         D.      Claim 4: Failure to Engage in the Interactive Process

12                 The FEHA also imposes liability on employers should they fail to "engage in a

13   timely, good faith, interactive process" in response to a request for a reasonable accommodation

14   by an employee with a known disability.  Cal. Gov't Code § 12940(n).  This section imposes

15   liability only if a reasonable accommodation was possible.  *Nadaf-Rahrov*, 166 Cal. App. 4th at

16   980–81.  That is, the ability to perform the essential functions of a job—with or without a

17   reasonable accommodation—is an element of a claim under section 12940(n).  *Id.* at 981–83

18   (distinguishing *Claudio v. Regents of Univ. of Cal.*, 134 Cal. App. 4th 224, 228 (2005), and

19   *Wysinger v. Automobile Club of S. Cal.*, 157 Cal. App. 4th 413, 425 (2007)).  "[T]he employee

20   who brings a section 12940(n) claim bears the burden of proving a reasonable accommodation

21   was available before the employer can be held liable under the statute."  *Id.* at 984; *see also*

22   *Scotch v. Art Inst. of Cal.-Orange Cty., Inc.*, 173 Cal. App. 4th 986, 995 (2009) (under section

23   12940(n), an employee must identify an available reasonable accommodation, even if after the

24   advent of litigation).  Here, for the reasons described above with respect to the first claim for

25   disability discrimination, Neufeld has not cited portions of the record that create a triable question

26   of fact with respect to whether a reasonable accommodation was possible; no evidence shows he

27   was qualified to perform the essential functions of a cashier position with or without a reasonable

28   accommodation.  Summary judgment is granted as to this claim.

1        E.     <u>Claim 5: Failure to Prevent Discrimination</u>

2        An employer must "take all reasonable steps necessary to prevent discrimination

3  and harassment from occurring." Cal. Gov't Code § 12940(k). Because Neufeld has presented

4  no case of discrimination, he cannot prevail on a FEHA claim for failure to prevent

5  discrimination. *See, e.g.*, *Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 748

6  (9th Cir. 2011) (citing *Trujillo v. N. Cty. Transit Dist.*, 63 Cal. App. 4th 280, 289 (1998)).

7  Summary judgment is granted as to this claim.

8  IV.    <u>CONCLUSION</u>

9        The motion for summary judgment is GRANTED. This order resolves ECF

10  No. 18.

11        CASE CLOSED.

12        IT IS SO ORDERED.

13  DATED: March 1, 2016.

14

15                                        _____

16                                   UNITED STATES DISTRICT JUDGE

17

18

19

20

21

22

23

24

25

26

27

28

11